
**Missouri REALTORS®**

# Contract for Sale of Vacant Land

1  This Contract is made between _____ Norman Rouse, Trustee _____ ("Seller")
2  and _____ Laurie Mallory, asp _____, ("Buyer"). The
3  "Effective Date" shall be the date adjacent to the signature of the last party to sign this Contract or the Counter Offer attached hereto (*if any*).

4  **1. PROPERTY.** Seller agrees to sell and convey to Buyer and Buyer agrees to purchase from Seller, the following described real estate (*if
5  no legal description is included below, then legal description on Seller's deed(s) to govern. Legal description(s) may be confirmed by a Survey
6  pursuant to Section 6 below*). Such real estate, together with all existing improvements located thereon (including all permanently attached
7  equipment and fixtures not specifically excluded below) and all rights, privileges and easements appurtenant thereto, and any items of personal
8  property specifically included below, are collectively referred to herein as the "**Property.**" Legal Description is:
9  attached.
10 _____ ☐ (*Check box if legal description attached*)

11 __28__  __31__  __25__  __XX East Dade 122__  __Everton__  MO __65646__  __Dade__
12 **Section  Township  Range     Street Address           City           Zip Code   County**

13 **2. INCLUSIONS AND EXCLUSIONS.** The Purchase Price and the Property includes (but is not limited to) all permanently attached
14 equipment and fixtures not specifically excluded below which now exist and are located on the real estate, all of which Seller warrants to convey
15 free and clear. *Note: This Contract, and **not** the Seller's Disclosure Statement, multiple listing or other promotional material provides for
16 what is included in this sale. To avoid misunderstanding, list below, as "included" or "excluded", any items which may be subject to
17 question.*

18 The following items are also **included** in the sale (*e.g., list any non-affixed equipment, machinery or other personal property to be included*):
19 _____
20 _____

21 The following items are **excluded** from the sale (*e.g., list any items reserved, leased or otherwise not owned by Seller such as satellite dish
22 equipment*): _____
23 _____

24 **3. PURCHASE PRICE.**
25 $ _____72,000_____ is the "**Purchase Price**" for the Property and is to be paid by Buyer as follows:
26 $ _____500_____ as "**Earnest Money**" in the form of (*check one*):
27 ☒ personal check ☐ cashier's check ☐ other _____, to be supplied at the time of original delivery hereof as set
28 forth at the Receipt and Acknowledgement following the end of this Contract, and which shall be deposited not later than ten (10) banking days
29 after the Effective Date in an escrow account with _____Abbey Title Company_____ ("**Escrow Agent**").
30 Escrow Agent may retain any interest earned on such deposit. If sale is closed, Earnest Money to apply toward the Purchase Price. Buyer shall
31 pay the balance of the Purchase Price by cashier's check or other form of funds acceptable to Closing Agent ("**Funds**") at Closing.

32 **4. CLOSING.** Subject to the terms of this Contract, this sale will be closed (meaning the exchange of the Deed for the Purchase Price,
33 together with all other documents and Funds required by this Contract, the "**Closing**") at the office of
34 _____Abbey Title Company_____ ("**Closing Agent**") in
35 _____Joplin_____, _____MO_____, on __or b/4 December__ __31__, 20__18__ (the "**Closing Date**").
36 **City                        State           Month                Day**

37 Possession and all keys will be delivered to Buyer at (*check one*) ☒ Closing or ☐ other _____.
38 *Note: If possession is to be transferred on a day other than day of Closing, if temporary access to the Property for a limited purpose is to be
39 made available prior to Closing, or if the Property is tenant occupied, then the parties should complete and attach an appropriate rider(s).
40 Brokers are not responsible for delivery of keys. It is recommended that Buyer change locks following possession.*

41 Unless specified otherwise, Seller warrants that the Property will be vacant as of the time of Closing (*e.g. except for tenant(s) in possession
42 pursuant to any lease or other agreement approved pursuant to this Contract*), and in its present condition (together with any improvements or
43 repairs required by this Contract), ordinary wear and tear excepted.

44 **5. FINANCING/APPRAISAL.** (*Check all applicable boxes*)
45 *Note: A lender's loan approval process may not include a traditional appraisal. Different types of "appraisals" are available and underwriting
46 requirements vary. If Buyer's performance under this Contract is to be independently conditioned upon the Property appraising at the Purchase
47 Price, Buyer should check box A and complete the following.*

48 ☒ **A. Appraisal.** Buyer's performance under this Contract is contingent upon the Property appraising at not less than the Purchase Price, by
49 an appraiser selected by Buyer and licensed by the State of Missouri (or selected by Buyer's lender if this Contract is also contingent on
50 financing). If the appraised value is less than the Purchase Price, Buyer may request a reduction in the Purchase Price
51 appraised value). If Buyer desires to act on this contingency, Buyer must deliver a written request (and a copy of the
52 later than ____ days (25 if none stated) after the Effective Date. *Note: MSC-2020N Appraisal Notice (Part A) may be used.*
53 Buyer does not timely deliver the Appraisal Notice to Seller, this contingency shall be deemed waived. If the parties
54 agreement to reduce the Purchase Price as requested within ____ days (5 if none stated) after delivery of the Appraisal
55 "**Appraisal Resolution Deadline**"), then this Contract shall automatically terminate (with Earnest Money returned to
56 unless Buyer waives this contingency by delivering Notice thereof to Seller on or before the Appraisal Resolution Deadline.

**EXHIBIT A**

57 *(Part C) may be used for this purpose.* If the Purchase Price is reduced, the loan amount in Buyer's financing contingency (*if any*) shall be
58 proportionately reduced.
59 ☐ **B. Not Contingent Upon Financing.** Although not a condition to performance, Buyer may finance any portion of Purchase Price.
60 ☐ **C. Nonconventional.** *Attach Government Loan (MSC-2011R) Seller Financing (MSC-2012R) or Assumption (MSC-2013R) Rider.*
61 ☒ **D. Conventional.** Buyer agrees to do all things reasonably necessary, including but not limited to completing a loan application, paying for a
62 credit report, appraisal and any other required fees, providing all information required by lender and otherwise cooperating fully to make a good
63 faith effort to obtain the financing described below. If Buyer does not deliver Notice, provided by Buyer's lender, to Seller of Buyer's inability to
64 obtain a loan on the terms described below, by 5:00 p.m. on the date (the "Loan Contingency Deadline") which is ____ days (*15 if none stated*)
65 after the Effective Date, then this contingency shall be deemed waived and Buyer's performance under this Contract shall no longer be conditioned
66 upon Buyer obtaining financing; provided however, if such lender will not give Buyer such Notice, then Buyer may directly notify Seller (on or
67 before the Loan Contingency Deadline) by providing a notarized affidavit that Buyer has timely complied with all of the terms of this paragraph
68 and that despite request, Buyer was unable to obtain such Notice from lender (*e.g., see MSC-2010A "Buyer's Financing Contingency Affidavit" or*
69 *MSC-2010B "Non-Individual Buyer's Financing Contingency Affidavit"*). If Buyer has complied with the terms of this paragraph and has timely
70 provided Notice to Seller of Buyer's inability to obtain a loan on the terms described below, then this Contract shall terminate with Earnest Money
71 to be returned to Buyer (subject to §8).
72 *(Complete one or both)* Loan amount: __80__ % of the Purchase Price, *or* $ _____
73 Initial interest rate not to exceed: __TBD__ %.   Amortization term __30__ years.
74 Rate Type (*check one*): ☒ Fixed ☐ Adjustable ☐ Other: _____
75 Other terms (*N/A if blank*): _____
76 *Note: If the Loan Contingency Deadline passes without a termination, Buyer remains obligated under this Contract and must have available all*
77 *Funds required to close. A "loan commitment" or "preapproval" does NOT guarantee that Buyer's loan will actually fund.*
78 **6. TITLE AND SURVEY.** At Closing, Seller shall transfer marketable title to the Property subject only to the Permitted Exceptions, as
79 directed by Buyer, by (unless otherwise specifically agreed) (*check one*): ☐ general warranty deed ☐ special warranty deed, or ☒ other
80 __Trustee's Deed__ (the "Deed") in properly
81 executed and recordable form.
82 Within ____ days (*10 days if none stated*) after the Effective Date (*check applicable box below*):
83 ☐ **A.** Seller shall deliver to Buyer, a commitment (the "Title Commitment") to issue a current ALTA owner's policy of title insurance in the
84 amount of the Purchase Price (the "Owner's Policy") both at Seller's cost.
85 ☐ **B.** Seller shall deliver to Buyer a Title Commitment to issue an Owner's Policy (cost of both to be split 50/50 between parties).
86 ☒ **C.** Seller shall deliver to Buyer a Title Commitment, at Seller's cost, to issue an Owner's Policy at Buyer's cost.
87 *(Specify if otherwise)* _____
88 ☐ **D.** Buyer may order a Title Commitment to issue an Owner's Policy (both at Buyer's cost).
89 The Title Commitment shall be issued by the Closing Agent, unless otherwise specified. If Seller already has a survey of the Property in Seller's
90 possession, Seller shall promptly deliver a copy to Buyer after the Effective Date. Buyer, at its sole option, expense and liability may also
91 obtain a survey of the Property ("Survey") to determine if there are any defects, encroachments, overlaps, boundary line or acreage
92 discrepancies, or other adverse matters that may be disclosed. Buyer acknowledges that all surveys are not alike *Note: Buyer should consult*
93 *with its lender and the title company as to their survey requirements and in order to provide full survey coverage to Buyer. MSC-2500*
94 *(Survey/Elevation Certificate Order Form) may be used to indicate Buyer's selection as to the type of survey or service to be provided and*
95 *the company which is to perform the same, or to indicate Buyer's waiver of this right.*
96 Buyer shall have ____ days (*20 days if none is stated*) after receipt of the Title Commitment to review the same, including all subdivision, use
97 and other restrictions, rights of way and easements, and all other recorded documents referenced therein which Buyer may desire to obtain (the
98 "Review Period"), and to deliver Notice to Seller of any objections which Buyer has to any matters shown or referred to therein and/or the
99 Survey ("Objections"); provided, however that if box 6D is checked then Buyer shall have ____ days (*20 days if none is stated*) after the
100 Effective Date (which shall be deemed to be the "Review Period") to review all such matters and deliver Notice of any Objections to Seller.
101 Buyer's failure to timely deliver Notice to Seller of any Objections within the applicable Review Period will constitute a waiver by Buyer of
102 any Objections. *Note: MSC-2055N (Title & Survey Notice) may be used to facilitate the delivery of any Title or Survey Objections, responses*
103 *thereto and the resolution thereof.*
104 If Buyer does timely object, Buyer must also deliver a copy of the Survey and/or Title Commitment to Seller pertaining to such Objections.
105 Seller shall have ____ days (*7 days if none stated*) from receipt of Buyer's Notice of Objections to agree in writing to correct the same prior to
106 Closing at Seller's expense. If Seller does not so agree, then this Contract shall automatically terminate unless Buyer, within ____ additional
107 days (*3 days if none stated*) after Buyer's receipt of Seller's response to Buyer's Objections, agrees in writing to accept the title without
108 correction of such Objections. *Note: If Seller fails to timely respond to Buyer's Objections, then Seller shall be deemed to have refused to*
109 *agree to correct any such Objections.* If the Contract is terminated under this Section, then the Earnest Money is to be refunded to Buyer
110 (subject to Section 8) and if any defect objected to causes a failure of marketable title, then Seller shall be liable for survey and title examination
111 charges. Seller shall be liable for clearing any exception to title that arises between the Effective Date and Closing and any existing lien (other
112 than general taxes and any installments of special taxes or assessments to be prorated at Closing) may be paid out of the Purchase Price proceeds.
113 Subject thereto, any item shown on the Title Commitment, abstract or Survey (or which could have been shown on a survey) and to which
114 Buyer does not timely submit an Objection during the Review Period, or for which Buyer waives Buyer's Objections as set forth herein, and
115 specifically including all laws and zoning ordinances, are collectively referred to herein as the "**Permitted Exceptions**". The Owner's Policy
116 must include mechanic's lien and inflation coverage, unless the title company issuing the Owner's Policy does not make available such
117 coverage(s), or unless otherwise provided herein. Buyer is responsible for the cost of any lender's policy of title insurance to be issued.
118 **7. INSPECTIONS.** Buyer may, at Buyer's option and expense, obtain written inspection reports of the Property from any qualified inspector,
119 contractor, appraiser or consultant that Buyer or its lender may engage, as deemed necessary by Buyer or its lender, including but not limited
120 to the condition or presence *(if any)* of: environmental hazards; plumbing, including water well and irrigation, sewer, septic and waste water
121 treatment systems; electrical systems and equipment; gas lines; soils and drainage. Except as set forth in Section 6 with respect to Survey and
122 Title Objections, Buyer may also review additional property data, including but not limited to zoning regulations; general taxes; school district;

and insurability of the Property ("Additional Property Data"). *NOTE*: The availability of the insurance must be ascertained during the Inspection Period, including but not limited to homeowner's and flood insurance, as well as the possibility that premiums may increase over the amount of premiums previously charged for insurance coverage(s). Buyer should also contact law enforcement officials for information pertaining to whether registered sex offenders or other convicted criminals reside in the area.

Seller agrees to permit Buyer or its representatives to enter the Property during reasonable hours and upon reasonable Notice to Seller and to allow Buyer to perform such inspections; provided that such investigations do not unreasonably disrupt the operation of the Property or Seller's business and/or cause any material or permanent Property damage. Buyer acknowledges that neither Seller nor anyone on Seller's behalf has made, nor do they hereby make, any warranties, guarantees or representations as to the past, present or future condition, income, expenses, operation or any other matter or thing affecting or relating to the Property, excepting only as may be expressly set forth in this Contract. The results of any inspection or test and the reports and conclusions of Buyer and Buyer's representatives shall be kept confidential (except as required by law) by Buyer and Buyer's representatives; provided that Buyer may disclose such items to Buyer's attorney, accountants, lenders and other parties reasonably necessary to enable Buyer to evaluate the Property. Buyer shall directly maintain, and shall cause any contractor or consultant engaged by it or its lender to maintain, adequate insurance at all times while performing any inspection at the Property.

Buyer shall furnish a complete copy of the written inspection report(s) and/or Additional Property Data to Seller with a written list of unacceptable condition(s) (the "**Inspection Notice**", See *MSC-2050N*) within ____ days (*10 days if none stated*) after the Effective Date (the "**Inspection Period**"). *(Note: Buyer is allowed to submit only 1 Inspection Notice during the Inspection Period. The Inspection Notice should include all matters unacceptable to Buyer).* Buyer agrees to immediately repair any damage to the Property and to indemnify and hold Seller harmless from and against all claims, costs, demands and expenses, including without limitation reasonable attorney fees and court costs resulting from these inspections. Buyer's obligations under this Section shall survive termination of this Contract. If Seller has not received an Inspection Notice by the end of the Inspection Period, Buyer shall be deemed to be satisfied with the results of such inspection(s). If timely Inspection Notice is given, it shall state whether: (1) Buyer is satisfied with all the inspections; (2) Buyer intends that any unacceptable conditions are to be satisfied by Seller (prior to Closing, unless otherwise specified); or (3) Buyer is terminating the Contract with the Earnest Money to be returned to Buyer (subject to Section 8). Failure to obtain any inspection shall constitute a waiver and acceptance by Buyer of any condition any inspection may have disclosed.

If this Contract is not terminated as provided above, Seller shall have ____ days (*7 days if none stated*) after Seller's receipt of the Inspection Notice (the "**Initial Response Period**") in which to respond in writing to Buyer's Inspection Notice. *(Note: If Seller fails to timely respond to Buyer's Inspection Notice, then Seller shall be deemed to have refused to agree to correct any alleged defects, or to provide a monetary adjustment at Closing).* The parties shall have an additional ____ days (*3 days if none stated*) after Buyer's receipt of Seller's response to Buyer's Inspection Notice to reach an agreement in writing as to who will complete and pay for the correction of the defects, or as to a monetary adjustment at Closing in lieu of correction of the defects, or the Contract is to be deemed to be automatically terminated and the Earnest Money shall be returned to Buyer (subject to Section 8); provided, however, that either a written commitment by Seller to correct those items submitted by Buyer for correction during the Inspection Period at Seller's expense, or a written commitment by Buyer to accept the Property without correction of any unacceptable condition(s) which Buyer originally objected to, shall constitute an "agreement" for purposes of this paragraph, even after earlier negotiation failed to produce an agreement. *Note: A monetary adjustment may affect the terms of Buyer's loan (e.g., down payment, interest rate). Failure to correct a physical defect may affect Buyer's ability to obtain any required occupancy permit.*

Buyer and all Brokers may be present during any inspections and the "walk-through". Such presence shall only serve to assist in the coordination of and compliance with the terms of this Contract and shall not in any way be interpreted as providing the Brokers with a special knowledge or understanding of any inspection results. The parties will rely only upon the written inspection results received directly from the appropriate expert(s), and acknowledge that Brokers have no expertise or responsibility in determining any defects that may be disclosed by any reports, records or other inspections, warranties or services. Buyer acknowledges that: (1) Buyer will not rely upon Brokers in any way as to the selection or engagement of a particular company for any inspection, warranty or service; (2) inspections, warranties and services may be offered by more than one company and the determination to select and engage a particular company and the completeness and satisfaction of any such inspection, warranty or service is the sole responsibility of Buyer; and (3) when choosing to engage a lender, inspector, warranty, service, title or repair company, or any other service provider, Buyer should consider, but not be limited by, the existence of errors and omissions insurance, liability insurance, business and professional licensure, membership in professional associations and years of experience. Buyer is encouraged to utilize for MSC-2045 ("Buyer's Inspection Authorization") to facilitate and coordinate this process. *Note: Pursuant to Missouri law, a real estate licensee, including the broker(s) assisting Buyer and/or Seller and their respective licensees (identified in the Brokerage Relationship disclosure Section below, collectively, the "Brokers"), shall be immune from liability for statements made by engineers, land surveyors, geologists, environmental hazard experts, wood destroying inspection and control experts, termite inspectors, mortgage brokers, home inspectors, or other home inspection experts unless: (1) the statement was made by a person employed by the licensee or the Broker with whom the licensee is associated; (2) the person making the statement was selected and engaged by the licensee; or (3) the licensee knew prior to Closing that the statement was false or the licensee acted in reckless disregard as to whether the statement was true or false. A licensee shall not be the subject of any action and no action shall be instituted against a licensee for any information contained in any Seller's disclosure furnished to Buyer, unless the licensee is a signatory to such or the licensee knew prior to Closing that the statement was false or acted in reckless disregard as to whether the statement was true or false. A licensee acting as a courier of documents referenced in this section shall not be considered to be making the statements contained in such documents.*

8. **DISPOSITION OF EARNEST MONEY AND OTHER ESCROWED FUNDS AND DOCUMENTS.** Regardless of any other terms of this Contract regarding forfeiture or return of Earnest Money, the Escrow Agent and/or Closing Agent (as the case may be, "**Escrow Holder**") shall not distribute the Earnest Money or any other escrowed funds, personal property or documents held by it ("**Escrow Items**") without the written consent of all parties to this Contract (signature on Closing Statement may constitute such consent). Absent such written consent, Escrow Holder shall continue to hold said Escrow Items in escrow until: (1) Escrow Holder has a written release signed by all parties consenting to its disposition; (2) a civil action is filed to determine its disposition (including an interpleader filed by Escrow Holder), at which time payment and delivery of the Earnest Money and/or any other Escrowed Items may be made into court, less any attorney fees, court costs and other legal expenses incurred by Escrow Holder in connection therewith; (3) a court order or final judgment mandates its disposition; or (4) as may be required by applicable law. The parties specifically acknowledge and agree that whenever ownership of the Earnest Money or any other escrowed funds received by a Missouri licensed real estate broker is in dispute between the parties, said Escrow Holder is required by §339.105.4 RSMo to report and deliver the moneys to the State Treasurer within 365 days of the initial projected Closing Date. Escrow Holder is hereby authorized to report and deliver any such moneys to the State Treasurer at any time following sixty (60) days after the initial projected Closing

191 Date (absent receipt of the written consent of all parties as set forth above). *Note: An Escrow Holder who is not a licensed real estate broker*
192 *is not necessarily bound by certain Missouri statutes and regulations which apply to earnest money deposits, or by the terms of this Contract*
193 *regarding any Escrow Items. If Escrow Holder requires that a separate escrow agreement be executed by the parties, then those separate*
194 *terms may supersede the foregoing and control.* In any reference in this Contract (including any attached rider) to the return of Earnest Money
195 to Buyer, Buyer agrees that any expenses incurred by or on behalf of Buyer may be withheld by Escrow Holder and paid to the applicable
196 service provider(s).

197 **9. LOSS; CONDEMNATION.** Risk of loss to improvements on the Property shall be borne by Seller until Closing. Seller agrees to
198 maintain Seller's current fire and extended coverage insurance (*if any*) on the Property until Closing. Seller shall do ordinary and necessary
199 maintenance, upkeep and repair to the Property through Closing. If, before Closing, all or any part of the Property is taken by eminent domain,
200 or if a condemnation proceeding has been filed or is threatened against the Property or any part thereof, or if all or any part of the Property is
201 destroyed or materially damaged, then Seller shall promptly provide Notice to Buyer of any such event, together with copies of any written
202 communications to and from the condemning authority and/or insurer (*as the case may be*), the policy limits and (if known) the amount of
203 proceeds payable on account of any physical damage to the Property, and whether Seller intends to restore, prior to the scheduled Closing Date,
204 the Property to its condition as of the Effective Date. If Seller restores the Property to its prior condition before the scheduled Closing Date,
205 then Buyer and Seller shall proceed with the Closing. *Note: MSC-2510N (Property Damage Notice) and MSC-2520N (Taking Notice) may be*
206 *used to deliver Notice of any Property damage (or Taking) and any election made in connection therewith.*

207 If the Property is not to be restored to its prior condition by Seller before the scheduled Closing Date, then Seller shall promptly provide Buyer
208 with a copy of any policy(ies) of insurance (or authorize that it be made available), the name and number of the agent for each policy and written
209 authorization (*if needed*) for Buyer to communicate with the insurer. Buyer may then either: (1) proceed with the transaction and be entitled to
210 all insurance proceeds (and/or condemnation payments and awards), if any, payable to Seller relating to any physical damage caused to the
211 Property, in which case the amount of any such payments theretofore made to Seller (plus the amount equal to any deductible not covered by
212 insurance) shall be a credit against the Purchase Price otherwise payable by Buyer at Closing, and Seller shall assign to Buyer all such remaining
213 claims and rights to or arising out of any such casualty or taking, including the right to conduct any litigation with respect thereto; or (2) rescind
214 the Contract, and thereby release all parties from further liability hereunder, in which case the Earnest Money shall be returned to Buyer (subject
215 to Section 8). Buyer shall give Notice of Buyer's election to Seller within 10 days after Buyer has received Notice of such damage or destruction
216 and the aforesaid insurance information, and Closing will be extended accordingly, if required (*i.e., if such information is not received by Buyer*
217 *more than 10 days prior to the date scheduled for Closing*). Seller shall not settle any claim regarding a taking of any part of the Property by
218 eminent domain or condemnation prior to the Closing (or earlier termination of this Contract) without the prior written approval of Buyer,
219 which approval shall not be unreasonably withheld, conditioned or delayed. Failure by Buyer to so notify Seller shall constitute an election to
220 rescind this Contract. A rescission hereunder does not constitute a default by Seller. If Buyer elects to proceed to Closing and Seller has agreed
221 to finance a part of the Purchase Price, then Buyer must use any insurance proceeds to restore the improvements. The provisions of this Section
222 shall survive Closing.

223 **10. ADJUSTMENTS AND CLOSING COSTS.** Adjustments, charges and Closing costs are agreed to be paid by the parties with sufficient
224 Funds to satisfy their respective obligations hereunder, as of the date of Closing (except as may otherwise be expressly set forth herein or in a
225 rider hereto). Such matters and the following prorations shall be itemized on a closing statement prepared by Closing Agent and executed by
226 Buyer and Seller at or prior to Closing (the "Closing Statement"), together with all other documents required of them pursuant to this Contract
227 and/or customarily required by Closing Agent to complete the Closing. The parties hereby specifically permit the involved Broker(s) to obtain
228 and retain copies of both Buyer's and Seller's Closing Statements as required by 20 CSR 2250-8.150. *Note: Buyer is cautioned to always call*
229 *to confirm instructions before sending any Funds via wire transfer.*

230 Buyer shall pay for (where applicable): (a) hazard insurance premium(s) from and after Closing; (b) flood insurance premium if required by
231 lender; (c) fees for the Survey or any appraisal ordered by or for Buyer; (d) title company charges (including Closing, recording and escrow
232 fees) customarily paid by a buyer in the County where the Property is located; (e) charges imposed by lender (*e.g.*, appraisal and credit report
233 fees, loan discount "points", loan origination or funding fees and other loan expenses), unless specifically agreed to be paid by Seller; (f)
234 building, termite, environmental and any other inspections ordered by Buyer; (g) special taxes, special subdivision and any other owner
235 association assessments ("Special Assessments") levied after Closing; (h) the value of any heating oil or propane gas left in any tank at the
236 Property (based on current market rate charged by supplier); (i) agreed upon repairs; (j) applicable municipal occupancy permit fee; and (k) any
237 commission or other compensation due from Buyer to the Broker(s).

238 Seller shall pay for (where applicable): (a) existing liens (recorded and unrecorded) and existing loans on the Property (if not assumed by
239 Buyer); (b) expenses of Buyer's loan agreed to by Seller; (c) title company charges (including Closing, releasing and escrow fees) customarily
240 paid by a seller in the County where the Property is located; (d) required municipal, conservation district and fire district inspection fees; (e)
241 so-called "one-time" Special Assessments levied before Closing; (f) security deposits and prepaid rents and expenses or Income (*as defined*
242 *below*) collected by or on behalf of Seller (to be credited to Buyer at Closing); (g) agreed upon repairs; and (h) any commission or other
243 compensation due from Seller to the Broker(s).

244 Buyer and Seller shall prorate and adjust between them on the basis of 30 days to the month as of the date of Closing (Seller to pay for
245 day of Closing): (a) current rents collected by or on behalf of Seller (Seller to receive rent for day of Closing), with rents delinquent over 30
246 days to be collected by Seller and not adjusted; (b) all other profits, royalties, tolls or earnings arising out of or in connection with the Property
247 ("Income") provided that no proration shall be made to any Income of which any portion is more than thirty (30) calendar days past due, which
248 delinquent Income may be collected by Seller. Buyer shall, upon receipt, turn over to Seller any Income received by Buyer after Closing
249 pertaining to any time period prior to Closing and for which no adjustment has been made, after deducting and crediting any amounts due to
250 Buyer for any time period after Closing; (c) general taxes (based on assessment and rate for current year, if both are available, otherwise based
251 on previous year); (d) installments of Special Assessments becoming due during the calendar year of Closing; (e) subdivision upkeep
252 assessments and monthly association fee; (f) interest (if Buyer assumes an existing loan per Section 5 above); and (g) flat rate utility charges
253 (including water, sewer and trash).

254 **11. BINDING EFFECT/ASSIGNABILITY/SECTION 1031 EXCHANGE.** This Contract is binding on and shall inure to the benefit of
255 the parties and their respective heirs, successors and permitted assigns. Buyer may not assign this Contract without the written consent of Seller
256 if: (a) Seller is taking back a note and deed of trust as part of the Purchase Price, or (b) Buyer is assuming the existing note. Assignment does
257 not relieve the parties from their obligations under this Contract. The parties acknowledge that Buyer may desire to acquire, and/or Seller may
258 desire to sell, the Property as part of a like-kind exchange ("Exchange") pursuant to §1031 of the Internal Revenue Code (the "Code"). Each

LND-2000                                                                                                                         PAGE 4 OF 7

259 party agrees to cooperate with the other and its qualified intermediary/ third-party facilitator in connection with any such Exchange, provided
260 however, in no event shall Closing hereunder be delayed or affected by reason of an Exchange, nor shall consummation of an Exchange be a
261 condition precedent or subsequent to any obligations of the parties under this Contract. No party shall be required to incur any cost or expense,
262 or to acquire or hold title to any real property, for purposes of consummating an Exchange at the request of another party (the "Requesting
263 Party"). In addition, no party shall, by this Contract or acquiescence to an Exchange by a Requesting Party, have its rights or obligations
264 hereunder affected in any manner, or be deemed to have warranted to a Requesting Party that such Exchange in fact complies with the Code.
265 A Requesting Party shall reimburse each other party for any cost or expense incurred by such non-requesting party with respect to an Exchange.

266 **12. ENTIRE AGREEMENT/MODIFICATION.** This Contract and any rider(s) or other attachments hereto (*if any*) constitute the entire
267 agreement between the parties hereto concerning the Property. There are no other understandings, written or oral, relating to the subject matter
268 hereof. This Contract may not be changed, modified or amended, in whole or in part, except in writing signed by all parties.

269 **13. DEFAULT/REMEDIES.** If either party defaults in the performance of any obligation under this Contract, the party claiming a default
270 shall notify the other party in writing of the nature of the default and the party's election of remedy. The notifying party may, but is not required
271 to, provide the defaulting party with a deadline for curing the default. Following a default by either Seller or Buyer, the other party shall have
272 the following remedies:

273 **A. Seller Defaults.** If Seller defaults, Buyer may: (1) specifically enforce this Contract and recover damages suffered by Buyer as a result
274 of the delay in the acquisition of the Property; (2) terminate this Contract by Notice to Seller, and agree to release Seller from liability upon
275 Seller's release of the Earnest Money and reimbursement to Buyer for all actual costs and expenses incurred by Buyer (and which are to be
276 specified in Buyer's Notice of default) as liquidated damages and as Buyer's sole remedy (the parties recognizing that it would be extremely
277 difficult, if not impossible, to ascertain the extent of actual damages caused by Seller's breach, and that return of the Earnest Money plus all
278 actual costs and expenses incurred by Buyer represents as fair an approximation of such actual damages as the parties can now determine); or
279 (3) pursue any other remedy and damages available at law or in equity. If Buyer elects to terminate this Contract, the Earnest Money, less any
280 expenses incurred by or on behalf of Buyer, shall be returned to Buyer (subject to Section 8). Buyer's release of Seller shall not relieve Seller's
281 liability (if any) to the Broker assisting Seller pursuant to any listing or other brokerage service agreement between them.

282 **B. Buyer Defaults.** If Buyer defaults, Seller may: (1) specifically enforce this Contract and recover damages suffered by Seller as a result
283 of the delay in the sale of the Property; (2) terminate this Contract by Notice to Buyer, and (subject to Section 8) retain the Earnest Money as
284 liquidated damages and as Seller's sole remedy (the parties recognizing it would be extremely difficult, if not impossible, to ascertain the extent
285 of actual damages caused by Buyer's breach, and that the Earnest Money represents as fair an approximation of such actual damages as the
286 parties can now determine); or (3) pursue any other remedy and damages available at law or in equity. If Earnest Money is retained by Seller
287 as liquidated damages, any right or interest of the Broker assisting Seller with respect thereto shall be as set forth in the listing or other brokerage
288 service agreement entered into between them.

289 **14. PREVAILING PARTY.** In the event of any litigation between the parties pertaining to this Contract, the prevailing party shall be entitled
290 to recover, in addition to any damages or equitable relief, the costs and expenses of litigation, including court costs and reasonable attorney
291 fees. The provisions of this Section shall survive Closing or any termination of this Contract.

292 **15. SELLER'S DISCLOSURE STATEMENT.** *(check one)*
293 ☐ A. Buyer confirms that before signing this offer to purchase, Buyer has received a completed Seller's Disclosure Statement for this Property.
294 The Seller's Disclosure Statement is not a substitute for any inspection that Buyer may wish to obtain. Buyer is advised to address any concerns
295 Buyer may have about information in the Seller's Disclosure Statement by use of conditions to performance under this Contract.
296 ☐ B. Seller agrees to provide Buyer with a Seller's Disclosure Statement (MAR form DSC-8020) within 1 day after the Effective Date. Buyer
297 shall have 3 days after delivery of the Disclosure Statement to review said disclosure and to deliver Notice of termination to Seller if this
298 Contract is to be terminated, in which case the Earnest Money shall (subject to Section 8) be returned to Buyer. If Buyer does not timely deliver
299 Notice of termination to Seller, then Buyer shall be deemed to have accepted the Disclosure Statement without objection.
300 ☒ C. No Seller's Disclosure Statement will be provided by Seller.
301 Seller confirms that the information in the Seller's Disclosure Statement (if any) is (or when delivered will be) accurate, to the best of Seller's knowledge,
302 as of the Effective Date of this Contract. Seller will fully and promptly disclose in writing to Buyer any new information pertaining to the Property that
303 is discovered by or made known to Seller at any time prior to Closing and constitutes an adverse material fact or would make any existing information
304 set forth in the Seller's Disclosure Statement false or materially misleading.

305 **16. FINAL WALK-THROUGH.** Buyer, its representatives and any inspector whose report prompted a request for repairs, shall have the
306 right to enter and "walk-through" and verify the condition of the Property. Seller will arrange, at Seller's expense, to have all utilities turned
307 on during the Inspection Period and during this "walk-through" (unless utilities have been transferred to Buyer). If the Property is then vacant,
308 Buyer shall have the right to have the utilities transferred to Buyer within _____ days *(4 days if none stated)* prior to Closing. This "walk-
309 through" is not for the purpose of conducting any new inspection, but only for Buyer to confirm that: (1) the Property is in the same general
310 condition as it was on the Effective Date; and (2) repairs agreed upon (*if any*) are completed in a workmanlike manner. Waiver of any inspection
311 does not waive the right to a "walk-through". Closing does not relieve Seller of any obligation to complete any repairs agreed upon or required
312 by this Contract.

313 **17. SIGNATURES.** This Contract may be executed in multiple counterparts, each of which shall be deemed an original, but all of which shall
314 constitute one and the same instrument. For purposes of executing or amending this Contract, or delivering a Notice pursuant hereto, an
315 approved standard form or other written document which is signed and transmitted by any electronic method deemed valid in accordance with
316 the Missouri Uniform Electronic Transactions Act, including but not limited to by facsimile machine, digital signature or a scanned image, such
317 as a pdf via e-mail, is to be treated as an original signature and document.

318 **18. GOVERNING LAW/CONSTRUCTION.** This Contract shall be construed in accordance with the laws of the State of Missouri, including
319 the requirement to act in good faith. The terms "Seller" and "Buyer" may be either singular or plural masculine, feminine or neuter gender,
320 according to whichever is evidenced by the signatures below. Section captions in this Contract are intended solely for convenience of reference
321 and will not be deemed to modify, place any restriction upon, or explain any provisions of this Contract. If any one or more provisions contained
322 in this Contract shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such invalidity, illegality or
323 unenforceability shall not be deemed to terminate this Contract or to affect any other provision hereof, but rather this Contract shall, to the
324 fullest extent permitted by law, remain in full force and effect and be construed as if such invalid, illegal or unenforceable provision(s) had
325 never been contained herein; provided, however, that such provision(s) may be referred to in order to determine the intent of the parties.

326  **19. NOTICES.** Any notice, consent, approval, request, waiver, objection or other communication (collectively, "Notice") required under this
327  Contract (after its acceptance) to be delivered to Seller shall be in writing and shall be deemed to have been delivered to Seller upon delivery
328  thereof to the Broker (or any of its affiliated licensees) assisting Seller, whether as a limited agent pursuant to a listing contract, a designated
329  agent *(if any)* acting on behalf of Seller, a dual agent or transaction broker. Likewise, any Notice to be delivered to Buyer shall be in writing
330  and shall be deemed delivered to Buyer upon delivery thereof to the Broker (or any of its affiliated licensees) assisting Buyer, whether as a
331  limited agent pursuant to a buyer's agency agreement, a designated agent *(if any)* acting on behalf of Buyer, a dual agent, transaction broker or
332  as a Seller's subagent. Refusal to accept service of a Notice shall constitute delivery of the Notice.

333  **20. RIDERS.** The following are attached and incorporated herein as part of this Contract: *(check all that apply)*
334  ☐ Government Loan MSC-2011R         ☐ Other: _____         ☐ Other _____
335  ☐ Other _____         ☐ Other _____         ☐ Other _____

336  **21. SPECIAL AGREEMENTS.** *(complete only if applicable)*  Closing fee charged by title company to be split 50/50.
337  Contingent upon bankruptcy court approval prior to closing.
338  _____
339  _____
340  _____

341  **22. LICENSEE PERSONAL INTEREST DISCLOSURE.** *(complete only if applicable)*
342  _____ *(insert name of licensee)*
343  is a real estate broker or salesperson, and is *(check one or more, as applicable)*:
344  ☐ a party to this transaction;
345  ☐ a principal of and/or has a direct or indirect ownership interest in ☐ Seller  ☐ Buyer; and/or
346  ☐ an immediate family member of ☐ Seller  ☐ Buyer. *Specify:*_____

347  **23. SOURCE(S) OF BROKER(S) COMPENSATION OR COMMISSION.** *(check one, neither or both, as applicable)*
348  ☒ Seller   ☐ Buyer
349  Seller and Buyer each represent and warrant to the other and to the Broker(s), that the Broker(s) identified in the Brokerage Relationship Section
350  below is (are) the only real estate broker(s) involved in this sale.

351  **24. BROKERAGE RELATIONSHIP.** By signing below, Buyer and Seller confirm their receipt of the Broker Disclosure Form prescribed
352  by the Missouri Real Estate Commission, and that disclosure of the undersigned licensee(s) brokerage relationship, as required by law or
353  regulation, was made to the Seller and/or Buyer or their respective agents and/or transaction brokers (as the case may be), by said undersigned
354  licensee(s), no later than the first showing of the Property, upon first contact, or immediately upon the occurrence of any change to their
355  relationship.

356  **Licensee assisting Buyer is a:** *(Check appropriate boxes)*                364  **Licensee assisting Seller is a:** *(Check appropriate boxes)*
357  ☐ Buyer's Limited Agent (acting on behalf of Buyer)                           365  ☒ Seller's Limited Agent (acting on behalf of Seller)
358  ☒ Seller's Limited Agent (acting on behalf of Seller)                         366  ☐ Buyer's Limited Agent (acting on behalf of Buyer)
359  ☐ Dual Agent (acting on behalf of both Buyer & Seller)                        367  ☐ Dual Agent (acting on behalf of both Seller & Buyer)
360  ☐ Transaction Broker Assisting Buyer (not acting on                           368  ☐ Transaction Broker Assisting Seller (not acting on behalf
361     behalf of either Buyer or Seller)                                          369     of either Seller or Buyer)
362  ☐ Subagent of Seller (acting on behalf of Seller)
363  ☐ *(Also check here if serving as a designated agent)*                        370  ☐ *(Also check here if serving as a designated agent)*

371  By signing below, the licensee(s) confirm making timely disclosure of its brokerage relationship to the appropriate parties.

372  ____Pro 100 Inc., Realtors____                                  ____Pro 100 Inc., Realtors____
373  **Broker's Firm Assisting Buyer (and MLS ID No., if required)**  **Broker's Firm Assisting Seller (and MLS ID No., if required)**
374  Broker's Firm State License #_____000003285_____              Broker's Firm State License #_____000003285_____

375  By *(Signature)* *Joyce Liggett, PC* (DocuSigned)               By *(Signature)* *Joyce Liggett, PC* (DocuSigned)
376  Licensee's Printed Name: Joyce Liggett, PC                      Licensee's Printed Name: Joyce Liggett
377  Licensee's State License # 1999129416                           Licensee's State License # 1999129416
378  Date: 11/21/2018 | 07:46 CST                                    Date: 11/21/2018 | 07:46 CST

379  **25. FRANCHISE DISCLOSURE.** Although one or more of the Brokers may be a member of a franchise, the franchisor is not responsible
380  for the acts of said Broker(s).

381  **26. SALES INFORMATION.** Permission is hereby granted by Seller and Buyer for the Broker(s) to provide, effective as of and after the
382  Closing, sales information of this transaction, including Purchase Price and Property address, to any multi-listing service, local Association or
383  Board of REALTORS®, its members, member's prospects, appraisers and other professional users of real estate data.

384  **27. FOREIGN INVESTMENT.** Seller represents that it is not a foreign person as described in the Foreign Investment in Real Property Tax
385  Act (26 U.S.C. §1445) and agrees to deliver a certificate at Closing to that effect which contains Seller's tax identification number.

386  **28. ANTI-TERRORISM.** Each party hereto represents and warrants to each other party and to the Broker(s), that such party is not, and is
387  not acting, directly or indirectly, for or on behalf of any person or entity, named as a Specially Designated National and Blocked Person (as
388  defined in Presidential Executive Order 13224), or with whom you are prohibited to do business with under anti-terrorism laws.

389 **29. ACCEPTANCE DEADLINE.** Buyer's offer to purchase the Property from Seller shall automatically expire if Seller has not accepted
390 this offer, in writing, and provided further that communication of that acceptance is made to Buyer or to the licensee assisting the Buyer by
391 _____ __.m., of _____.

392 **30. TIME IS OF THE ESSENCE.** Time is of the essence in the performance of the obligations of the parties under this Contract.
393 **All references to a specified time shall mean Central Time. With the exception of the term "banking days," as used herein,**
394 **a "day" is defined as a 24-hour calendar day, seven (7) days per week.**

395 **BUYER:** *(for a corporation, limited liability company, partnership or other form of legal entity)*

396 _____    **Attest:**

397 By:_____    _____
398 Printed Name:_____    Printed Name: _____
399 Title:_____    Date: _____ Time:_____
400 Date:_____ Time:_____

401 **BUYER:** *(for one or more individuals)*
402 [signature: Laurie Mallory]
403 Buyer                              Buyer
404 Printed Name: __Laurie Mallory__   Printed Name: _____
405 Date: 11/21/2018 | 07:43 CST Time:____    Date: _____ Time: _____

---

406 **SELLER** *(check one and initial _____)* ☐ rejects ☐ counter offers (Counter Offer form MSC-2040, which
407 amends the terms of this offer, is attached and incorporated into this Contract).

408 *By signing below, Seller indicates Seller has ACCEPTED this offer.*

409 **SELLER:** *(for a corporation, limited liability company, partnership or other form of legal entity)*

410 _____    **Attest:**

411 By: [signature: Norman Rouse, Trustee]   _____
412 Printed Name: Norman Rouse, Trustee      Printed Name: _____
413 Title:_____    Date: _____ Time: _____
414 Date: 11/21/2018 | 09:59 CST Time:____

415 **SELLER:** *(for one or more individuals)*
416 _____    _____
417 Seller                             Seller
418 Printed Name: _____    Printed Name: _____
419 Date: _____ Time:_____  Date: _____ Time:_____

*************************************************************************

420 **RECEIPT AND ACKNOWLEDGEMENT**
421 Receipt of the Earnest Money is acknowledged by the undersigned and will be delivered to Escrow Agent for deposit as set forth in
422 Section 3.

423 By *(Signature)*_____

424 Licensee's Printed Name: ___Joyce Liggett, PC___    Date: _____

Approved by legal counsel for use exclusively by current members of the Missouri REALTORS®, Columbia, Missouri. No warranty is made or implied as to the legal
validity or adequacy of this Contract, or that it complies in every respect with the law or that its use is appropriate for all situations. Local law, customs and practice, and
differing circumstances in each transaction, may each dictate that amendments to this Contract be made. Last Revised 12/31/17.    ©2017 Missouri REALTORS®

LND-2000                                                                                    PAGE 7 OF 7

Printed Using formsRus.com On-Line Forms Software 1/18

**FILED**

IN THE CIRCUIT COURT OF DADE COUNTY, MISSOURI
PROBATE DIVISION

**NOV 05 2014**

MARY McGEE
CIRCUIT CLERK
DADE COUNTY MISSOURI

In the Estate of )
)
MICHAEL ALLEN HOLMAN ) Estate No. 14DD-PR00038
)
Deceased. )

### JUDGMENT DETERMINING HEIRSHIP

NOW, on this date, the Application of Chelsea Pennington for the determination of the heirs of Michael Allen Holman, Deceased, comes on for hearing, the Applicant appearing by attorney, Allen G. Rose, and there being no other appearances.

The Court finds that the Notice of the time and place of the hearing has been given as provided by law and proof thereof duly filed. Thereupon, evidence is produced upon said Application, and after hearing and considering the same and being otherwise fully advised in the premises, the Court finds as follows:

1. That the matters and facts stated in said Application are true and correct.

2. Michael Allen Holman, deceased, died on June 15, 2007; that more than one year has elapsed since his death; that no administration has been commenced on the Estate of said Decedent in this state, and that no will of the said Decedent has been presented for probate in this state.

3. That the Decedent, at the time of his death, was the owner of the following described property located and having a situs in this state, to-wit:

| Description of Property | Custodian | Value |
|---|---|---|
| All of the Northeast Quarter (NE1/4) of the Northeast Quarter (NE1/4) and the East Half (E1/2) of the North Half (N1/2) of the North West Quarter (NW1/4) of the Northeast Quarter (NE1/4) of Section Twenty Eight (28), Township Thirty One (T31), Range Twenty Five (R25), all in Dade County, Missouri. | Applicant | $105,983.20 |

said property being the real property described in said Application with respect to which the Determination of Heirship from and under said Decedent is sought by said Applicant.

